TEXAS WORKERS' COMPENSATION COMMISSION, the Subsequent Injury Fund, and Todd Brown in His Official Capacity as Executive Director of the Texas Workers' Compensation Commission, Appellants,

v.

The CITY OF BRIDGE CITY, Texas, and the Texas Municipal League Intergovernmental Risk Pool, Appellees.

No. 03–94–00124–CV.

Court of Appeals of Texas, Austin.

May 24, 1995.

Rehearing Overruled July 12, 1995.

Dan Morales, Atty. Gen. and Joseph A. Pitner, signed brief, Asst. Atty. Gen., Tort Litigation Div., Austin, for appellants.

Robert D. Stokes, signed brief, Flahive, Ogden & Latson, Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

The Texas Workers' Compensation Commission, its executive director Todd Brown, and the Subsequent Injury Fund[1] appeal from a declaratory judgment and permanent injunction ordered by the trial court in a suit brought by the City of Bridge City, Texas, and the Texas Municipal League Intergovernmental Risk Pool ("TML"). We will reverse the trial-court judgment, dissolve the injunction, and render the declaratory judgment we believe the trial court should have rendered. Tex.R.App.P. 81(c).

### THE CONTROVERSY

Under the Texas Workers' Compensation Act, the legislature established a four-tier system for the determination of claims. Subchapter B provides first for the informal resolution of claims through a non-adversari-

---

1. "The subsequent injury fund is a special fund in the state treasury." Tex. Lab.Code Ann. § 403.006 (West 1995).

al conference conducted by a "benefit review officer" who may render an interlocutory order that benefits be paid or that they not be paid. The informal conference is a prerequisite to any further proceeding toward resolution of the claim. *See* Tex.Lab.Code Ann. §§ 410.021–.024 (West 1995) ("Act"). If issues remain unresolved after the conference, the parties may agree to resolve the claim by arbitration under Subchapter C; failing agreement in that regard, a party may elect to determine the claim by a contested-case proceeding under the provisions of Subchapter D. *Id.* §§ 410.101–.121 (arbitration); §§ 410.151–.169 (contested case). The third tier is established in Subchapter E, providing for an administrative appeal from the hearing officer's contested-case decision to an appeals panel. *Id.* §§ 410.201–.208. Review outside the Commission is authorized in Subchapter F, establishing a cause of action for judicial review of the appeals-panel decision or the hearing officer's decision if the appeals panel fails timely to render a decision. *Id.* §§ 410.251–.256.

The insurance carrier must commence making any payments ordered by the benefit-review officer. If the order is reversed or modified after arbitration or the contested-case proceeding, however, the carrier is entitled to reimbursement from the subsequent-injury fund for any overpayment. *Id.* § 410.025(c). And if the appeals-panel decision affirms the carrier's duty to pay, but the decision is finally modified or reversed by a reviewing court, the carrier is entitled to reimbursement from the fund for any overpayment. *Id.* § 410.205(c). Apparently, these provisions are construed so that the carrier is not entitled to recover any overpayment made during the period between the date of the contested-case decision requiring payment and the date of the appeals-panel decision affirming that decision, even though the latter decision is reversed on judicial review.

Threatened by administrative penalties if they do not pay benefits during the only period when reimbursement is not expressly

secured by the statutory scheme, the City (a self-insurer) and TML sued for declaratory judgment that the Act is unconstitutional.[2] The trial court held the scheme unconstitutional on the grounds indicated below and issued a permanent injunction against enforcement of the scheme. The Commission, its executive director, and the Subsequent Injury Fund appeal.

## THE TRIAL–COURT JUDGMENT

The trial court held the statutory scheme unconstitutional on the following grounds:

1. The requirement of immediate payment of a decision and order of benefit contested case hearing officer during the pendency of an appeal to the Appeals Panel [Tex.Labor Code Ann. § 410.169] ... and Commission Rule 142.16(e) through (g) violates Article 1, § 19, of the Texas Constitution because it limits the City's property rights in a fundamentally unfair manner.

2. This pre-payment without reimbursement scheme violates Article 1, § 13, of the Texas Constitution because it is an unreasonable interference with access to the courts. The scheme imposes unreasonable financial barriers on court access and fails to provide a meaningful access and fails to provide a meaningful legal remedy to the Plaintiffs.

3. Article 1, § 17, of the Texas Constitution is also violated by this administrative scheme. The Plaintiffs hold the disputed funds in trust for the citizens of the City of Bridge City, Texas and the administrative requirement that the City's funds be forfeited prior to a final decision, without hope of recovery, is a taking in violation of the Texas Constitution.

4. The statutory scheme also violates Article 3, § 61, because it fails to provide suitable laws for the administration of workers' compensation insurance administration.

**2.** Appellants served the Attorney General with a copy of the petition pursuant to section 37.006 of the Civil Practice and Remedies Code. Tex.Civ.

Prac. & Rem.Code Ann. § 37.006 (West 1986). The Attorney General declined to intervene.

## DISCUSSION AND HOLDINGS

### I.

■ In their first point of error, appellants contend the trial court erred because a municipal corporation is not a "citizen" or "person" within the meaning of the bill of rights constituting Article I of the state constitution, specifically sections 13, 17, and 19 upon which the trial court based its declaration that the statutory scheme is unconstitutional. Tex. Const. art. I, §§ 13, 17, 19. We believe the trial court erred. Municipal corporations and other government subdivisions derive their existence and powers from legislative enactments and are subject to legislative control and supremacy. Consequently, they cannot use the sword of the due-process-of-law and other provisions of Article I to invalidate the laws that govern them. *See McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ.App.—Waco 1974, no writ); *Harris County v. Dowlearn,* 489 S.W.2d 140, 145 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *Boyett v. Calvert,* 467 S.W.2d 205, 210 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.), *appeal dismissed for want of federal question sub nom., Anderson v. Calvert,* 405 U.S. 1035, 92 S.Ct. 1316, 31 L.Ed.2d 577 (1972); *see generally* 2 Eugene McQuillin, *Municipal Corporations* § 4.20 (3d ed. 1988). Concerning the corresponding guarantees in the Bill of Rights in the federal constitution, the rationale and the result apply without distinction between a municipality's governmental and proprietary functions. *City of Trenton v. New Jersey,* 262 U.S. 182, 192, 43 S.Ct. 534, 538, 67 L.Ed. 937 (1925).

The City and TML cite *Love v. City of Dallas,* 120 Tex. 351, 40 S.W.2d 20 (1931), in support of the proposition that a municipality may obtain invalidation of a legislative enactment on the basis of Article I, section 17 of the State Constitution which forbids the taking of property without adequate compensation being first paid by the State. In *Love,* the court stated as follows:

> Since the Constitution, art. VIII, § 3, contemplates that districts shall be organized and taxes levied for the education of scholastics within the districts, it is obvious that the education of nonresident scholastics is not within their ordinary functions as quasi-municipal corporations; and under the authorities cited the Legislature is without power to impose such an obligation on them, without just compensation.

*Id.,* 40 S.W.2d at 27. The *Love* opinion does not mention any section of Article I of the constitution. The decision rests instead on Article VIII, section 3, a provision outside the bill of rights and its guarantees to "persons" and "citizens." Thus, *Love* is merely one of a class of cases holding that the legislature's supremacy and control over municipalities and other agencies of the state do not extend so far as to permit the legislature to infringe upon rights given municipalities and other subdivisions or agencies of the State, *as such,* in some express constitutional provision outside Article I. *See, e.g., Nueces County v. People's Baptist Church,* 860 S.W.2d 627, 630 (Tex.App.—Corpus Christi 1993, writ granted); *Durish v. Texas State Bd. of Ins.,* 817 S.W.2d 764, 767 (Tex.App.—Texarkana 1991, no writ). No such constitutional provision exists here.

■ TML comes within the principles just discussed. It was created by former article 8309h of the Texas Revised Civil Statutes, entitled Workman's Compensation Insurance for Employees of Political Subdivisions. *See* Act of May 10, 1973, 63d Leg., R.S., ch. 88, § 17, 1973 Tex.Gen.Laws 198 (Tex.Rev.Civ. Stat.Ann. art. 8309h, since repealed and codified at Tex.Lab.Code Ann. §§ 504.001–.003, .011–.018, .051–.052, .071–.073 (West 1995)). The relevant statute authorizes "two or more political subdivisions to establish a joint insurance fund" to provide workers' compensation benefits for employees of the subdivision. Tex.Lab.Code Ann. § 504.016. The legislature may, without violating any provision of Article I or any other article made known to us, alter or repeal these statutory provisions at any time.

■ The fourth basis for the trial court's judgment, an asserted violation of Article III, section 61, of the state constitution, is not a constitutional provision within the bill of rights constituting Article I. It lies outside Article I and is a kind of guarantee to municipalities similar to the class involved in *Love, People's Baptist Church,* and *Durish. See*

*Love,* 40 S.W.2d at 27; *People's Baptist Church,* 860 S.W.2d at 630; *Durish,* 817 S.W.2d at 767. Section 61 does not, however, confer upon municipalities any *judicially* enforceable right. It is, rather, a political guarantee. Section 61 provides as follows:

> The Legislature shall have the power to enact laws to enable. cities, towns, and villages ... to provide Workmen's Compensation Insurance, including the right to provide their own insurance risk for all employees; and the Legislature shall provide *suitable* laws for the administration of such insurance in the said municipalities and for payment of the costs, charges, and premiums on policies of insurance and the benefits to be paid thereunder.

Tex. Const. art. III, § 61 (emphasis added).

The terms of section 61, addressed to the legislature, appear to be permissive only, notwithstanding the word "shall" in the second clause. *Id.* interp. commentary (West 1984); *see also* 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 284–89 (1977).

In any case, the question of what is a "suitable" law is not within the power of a court to decide. By its very nature, it is a political question committed to the legislature because it calls for pure public-policy decisions beyond a court's competence. *See Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 714 (1959). We are aware that the supreme court undertook to determine what was not an "efficient" system of public schools in applying Article VII, section 1 to judge the constitutionality of a legislative enactment. *See Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391 (Tex.1989). The

analogy is inescapable. It is, however, the only instance of which we are aware in which a court has undertaken such a task. It seems obvious that only the legislature has the facilities to investigate and ascertain the state of affairs in the complex field of workers' compensation, to make the necessary adjustment of competing interests, to identify the objectives and purposes the state should pursue in the matter, and to compose the new rules of conduct by which these are to be achieved. On the other hand, it appears that a court, in a single case involving a few disputing parties, is singularly lacking in such facilities and unfit for the task. We hold, therefore, that the trial court exceeded its power in deciding that the statutory scheme is not "suitable" and, therefore, unconstitutional under Article III, section 61.[3] *See State v. Reyna,* 160 Tex. 404, 333 S.W.2d 832, 838–39 (1960).

## II.

If we be mistaken in any of the foregoing, we hold the statutory scheme is not unconstitutional on the ground that it omits to provide for reimbursement of sums paid during the period between a hearing officer's contested-case decision and the decision of an appeals panel. Our holding extends to each of the four constitutional provisions given in the trial-court judgment as the grounds upon which its finding of unconstitutionality rested.

The statutory scheme comes to a reviewing court with certain presumptions that stand until the opposite is made to appear by one who would challenge the scheme's constitutionality: the challenger must point out precisely how a constitutional

---

**3.** If the Congress or a state legislature has passed an inadequate statute, why should it not be revised by judicial construction? If the statute is one that is manifestly unwise, harsh or out-of-date, why should it not be abrogated by the exercise of the power of judicial review? ...
The objections to such alluring but deceptive plausibilities are more deep-seated than might appear at first blush. For in the end what would eventuate would be a substantial transfer of legislative power to the courts. A function more ill-suited to judges can hardly be imagined, situated as they are, and should be, aloof from the political arena and beholden to

no one for their conscientious conduct. Such a course would also denigrate the legislative process, since it would tend to relieve legislators from having to account to the electorate. The outcome would inevitably be a lessening, on the one hand, of judicial independence and, on the other, of legislative responsibility, thus polluting the blood stream of our system of government. We should be on guard against any such deliberate or unwitting folly.
Justice John M. Harlan, *Thoughts at a Dedication: Keeping the Judicial Function in Balance,* 49. A.B.A. J. 943, 944 (1963).

principle has been violated; every reasonable intendment and presumption will be made in favor of constitutionality; if there could exist a state of facts justifying the scheme, the reviewing court will assume its existence; and the legislature is presumed to be familiar with the State's regulation and the conduct of workers' compensation insurance operations. *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 109 (Tex.App.—Austin 1985, writ ref'd n.r.e.).

 Under each of the four constitutional grounds named in the trial-court order, we believe the issue reduces to one of substantive due process of law, an inquiry whether the omission to provide for reimbursement in one stage, while providing for it in the others, is rationally related to a legitimate state interest in a highly regulated, complex, economic field. *Id.* at 113–14. We believe the State's interest in securing payment to an injured worker as soon as practical is as obvious as a worker's private interest in that regard. On the other hand, the State is bound to weigh the likelihood that the injured worker is not legally entitled to the sums he claims. Assurance against that likelihood is itself a legitimate state interest of equal weight, even as it is simultaneously a matter in which the insurance carrier has a keen interest of its own; the availability of insurance is essential for the Act to work at all. *See generally Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916), *aff'd*, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919).

The statutory provisions for the contested-case proceeding are distinctly trial-type procedures designed to result in determinations made according to the facts and the law. They include adequate notice, the opportunity to present evidence, legal argument and rebuttals thereto, representation by counsel, a decision based only upon evidence introduced into the record of the hearing, and a complete record consisting of a transcript of testimony and arguments, together with the documentary evidence and all other papers filed in the proceeding. *See* Tex.Lab.Code Ann. §§ 410.151–.168; Administrative Procedure Act, Tex.Gov't Code Ann. §§ 2001.051–

.147 (West 1995). There can be no question that these provisions exceed the minimum requirements of procedural due process of law. Bernard Schwartz, *Administrative Law* § 5.1, at 203–04 (2d ed. 1984).

It is obvious that the interim between the time a benefit-review officer orders payment to the injured worker and the time such order is modified after a contested-case hearing may be lengthy, given the minimum due process requirements mentioned above and the additional protections, such as provisions for discovery and continuances, that apply in contested cases conducted under the Administrative Procedure Act. Consequently, section 410.032(b) provides reimbursement protection for the insurer. Similarly, a lengthy period may expire before a reviewing court finally reverses or modifies an appeals-panel decision awarding benefits; accordingly, section 410.205(c) provides reimbursement protection for the insurer.

The situation is distinctly different, however, concerning the interim period between the date a hearing officer issues his or her decision in a contested case and the date an appeals panel makes it decision. A party filing a request for appeal must do so not later than the fifteenth day after the date on which the decision of the hearing officer is received; the respondent must file a written response with the appeals panel not later than the fifteenth day after service of the request for appeal; and the appeals panel must give its decision in writing not later than the thirtieth day after the response is filed, or the decision of the hearing officer becomes final and tantamount to the final decision of the appeals panel. Act § 410.204.

We conclude the legislature could rationally adjust the competing public and private interests in the manner set out in the statutory scheme. The insurer's interest in protecting itself against legally erroneous payment orders is secured to a large degree by two factors. Firstly, the contested-case proceedings are conducted by legally trained persons [4] with elaborate trial-type procedures designed to assure legally correct decisions based upon the law and the facts. The

---

4. Act § 410.152.

risk of an erroneous decision is reduced accordingly. Secondly, the interim between the contested-case decision and the appeals-panel decision is designedly short, thereby reducing the period in which the carrier may be required to make the interlocutory payments, and thus limiting the maximum *amount* of such payments, without an express provision for reimbursement should the carrier ultimately prevail on judicial review.

And the "omission" of which appellees complain must be judged in context. The face of the Act reflects innumerable compromises and adjustments made in the course of the legislative process. The claimed "omission" appears to be only one of these. While appellees conceive themselves injured by the "omission" to provide reimbursement for the limited payments made in the short period indicated, an injured employee might feel much the same by having to bear the entire risk of loss over and above the maximums allowed by section 408.061, the denial of all benefits under section 408.082 when the duration of disability is a week or less, or any of the various definitions and other qualifications that are applicable in determining whether and to what extent an employee may receive benefits. These compromises and adjustments do not amount to a denial of due process of law. *See Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 163, 39 S.Ct. 227, 231, 63 L.Ed. 527 (1919).

We therefore reverse the trial-court judgment, dissolve the permanent injunction, and render a declaratory judgment that section 410.169 of the Texas Labor Code and Commission rule 142.16(e) through (g) are constitutional.