# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00510-CV

---

**Texas Workers= Compensation Commission; The Subsequent Injury Fund; and
Leonard W. Riley, Jr., Appellants**

**v.**

**Continental Casualty Company, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. 99-13797, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

---

Continental Casualty Company filed this declaratory judgment action[1] seeking an interpretation of provisions of the Texas Workers= Compensation Act against the Texas Workers= Compensation Commission (the ACommission@) and the Subsequent Injury Fund (the AFund@) (collectively, the ACommission@).[2] This case involves a dispute between Continental and the Commission, which is charged with administering the state workers= compensation fund, over the interpretation of statutory provisions requiring the Commission to reimburse insurers for benefits paid to claimants pursuant to the Commission=s interlocutory orders. The Commission interpreted the statute as containing an exception to the reimbursement requirement. When the Commission refused to reimburse Continental, it judicially

---

[1] Continental filed this suit based, in part, on section 37.004 of the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(a) (West 1997).

[2] Leonard W. Riley, Jr. is executive director of the Commission and was sued in his official capacity.

challenged the Commission's statutory interpretation of the Act. The district court granted a summary judgment in favor of Continental and declared that the statute contained no such exception and ordered reimbursement. The Commission appeals. We will affirm the district court's judgment.

**BACKGROUND**

This particular dispute arises out of an administrative proceeding at the Commission between Continental and Elisa Smith involving the compensability of a lumbar spine injury Smith sustained. A contested-case hearing officer found that the back injury was compensable. A Commission appeals panel affirmed that decision. At each stage of the administrative process, Continental paid to Smith the benefits required by the Commission's interlocutory orders. Finally, Continental appealed the appeals panel's decision to a Harris County district court, which found, after a trial on the merits, that Smith's back injury was not compensable.

When the district court's judgment reversing the Commission's interlocutory decisions became final, Continental sought reimbursement from the Fund pursuant to section 410.205(c) of the Texas Labor Code, the Texas Workers= Compensation Act (the AAct@). The Fund reimbursed only $8,012.44 of the $42,107.92 that Continental paid to Smith. The Fund refused to pay $34,095.48 of the benefits paid by Continental to Smith because that amount had been paid during the stage of the administrative proceeding between the contested-case decision and the appeals panel decision. The Fund's refusal was based on the Commission's interpretation of the pre-1999 version of Chapter 410 of the Act.[3] The

---

[3] *See* Act approved May 24, 1993, 73d Leg., R.S., ch. 269, ' 1, 1993 Tex. Gen. Laws 987, 1202, *repealed by* Act of May 19, 1999, 76th Leg., R.S., ch. 955, ' 2, 1999 Tex. Gen. Laws 3696, 3697

Commission interprets that version of the Act as having a Agap@ in its reimbursement provisions between the contested-case hearing decision and the appeals panel decision. Continental paid to Smith $34,095.48 of benefits during this Agap.@ Therefore, the Fund concluded, it was not required to reimburse that portion of Continental=s payments to Smith.

Continental sued for a judicial interpretation of its rights to reimbursement under the Act. The district court below granted Continental=s motion for summary judgment and found that the pre-1999 version of the Act did not contain a reimbursement Agap.@ The court ordered the Fund to reimburse Continental the total amount it paid to Smith. The Commission now appeals.

**DISCUSSION**

Both the procedural posture and the substance of this case dictate that we review the decision *de novo.* Summary judgment is available where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Therefore, summary judgments are subject to *de novo* review. *Vanliner Ins. Co. v. Texas Workers=Comp. Comm=n*, 999 S.W.2d 575,

---

(formerly Tex. Lab. Code Ann. ' 410.032(b), since amended); Act approved May 24, 1993, 73d Leg., R.S., ch. 269, ' 1, 1993 Tex. Gen. Laws 987, 1209, *repealed by* Act of May 19, 1999, 76th Leg., R.S., ch. 955, ' 4, 1999 Tex. Gen. Laws 3696, 3697 (formerly Tex. Lab. Code Ann. ' 410.205(c)). The payments in this case were all made prior to the effective date of the 1999 amendments to the Act. Thus, former sections 410.032(b) and 410.205(c) control the issues in this case.

577 (Tex. App.CAustin 1999, no pet.). Interpreting statutes is a legal matter also subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002).

The Commission raises two issues on appeal: (1) whether the trial court had jurisdiction to adjudicate the matter because Continental failed to first seek an administrative remedy, and (2) whether the trial court erred in interpreting the statute and granting summary judgment in favor of Continental. We address the jurisdictional challenge first.

## I. JURISDICTION

The Commission challenges the district court=s jurisdiction to decide this case. It argues that Continental was obliged to first contest the Commissioner=s decision to refuse reimbursement at the Commission level through administrative proceedings. Because Continental failed to exhaust its administrative remedies, the Commission argues, the district court lacked subject matter jurisdiction over the reimbursement claim. This Court has previously held that an insurer, refused reimbursement by the Commission under the pre-1999 version of the Act, may seek judicial relief through a direct declaratory judgment action. *Everest Nat=l Ins. Co. v. Texas Workers=Comp. Comm=n*, No. 03-01-00631-CV, slip op. at 13-14, 2002 Tex. App. LEXIS 4464, at *19 (Tex. App.CAustin June 21, 2002, no pet. h.); *Texas Workers=Comp. Comm=n v. Texas Builders Ins. Co.*, 994 S.W.2d 902, 907, 909 (Tex. App.CAustin 1999, pet. denied). The Commission=s jurisdictional challenge is overruled.

## II. STATUTORY INTERPRETATION

4

To determine whether the district court=s interpretation of the Act was correct, we begin with rules of statutory construction, or textual aids. Determining legislative intent is the overriding goal of statutory interpretation. *Continental Cas. Co. v. Downs*, 45 Tex. Sup. Ct. J. 755, 756, 2002 Tex. LEXIS 73, at *4 (June 6, 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov=t Code Ann. ' 311.011 (West 1998); *Kroger Co. v. Keng*, 23 S.W.3d 327, 349 (Tex. 2000); *Texas Builders Ins. Co.*, 994 S.W.2d at 908. Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *RepublicBank Dallas, N.A. v. Interkal, Inc*., 691 S.W.2d 605, 607 (Tex. 1985).

Statutes are interpreted by considering the entire statute, not just disputed provisions. *Thomas v. Cornyn*, 71 S.W.3d 473, 481 (Tex. App.CAustin 2002, no pet.). Disputed provisions are to be considered in context, not in isolation. *See Fitzgerald v. Advanced Spine Fixation Sys*., 996 S.W.2d 864, 866 (Tex. 1999). Courts consider such things as the circumstances under which the statute was enacted, former statutory provisions on the same or similar subjects, and the consequences of a particular construction when interpreting statutes. *Keng*, 23 S.W.3d at 349. We do not give one provision an interpretation that is inconsistent with the other provisions of the act. *Id.*

The underlying object of a statute must inform a court=s interpretation and application of that statute. *See* Tex. Gov=t Code Ann. ' 311.023 (West 1998). Statutes are to be interpreted and applied to achieve, not frustrate, the object sought to be attained by the legislature in enacting the statute. *See In re J.A.B.*, 13 S.W.3d 813, 816 (Tex. App.CFort Worth 2000, no pet.). Courts must interpret a statute to promote its underlying purpose and the policies it embodies. *Northwestern Nat=l County Mut. Ins. Co. v.*

*Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.CSan Antonio 2000, pet. denied). When interpreting a statute, we must be mindful of the consequences of a particular construction. Tex. Gov=t Code Ann. ' 311.023; *Korndorffer v. Baker*, 976 S.W.2d 696, 700 (Tex. App.CHouston [1st Dist.] 1997, pet. dism=d w.o.j.).

A[Construction of a statute by the agency charged with its enforcement is entitled to serious consideration only if that construction is reasonable and does not contradict the statute=s plain language,@ *Downs*, 45 Tex. Sup. Ct. J. at 757, 2002 Tex. LEXIS 73, at \*12-13, or is not Aclearly inconsistent with the Legislature=s intent.@ *Texas Water Comm=n v. Brushy Creek Mun. Util. Dist*., 917 S.W.2d 19, 21 (Tex. 1996). An agency is not free to vary the terms of an unambiguous statute. *Winnebago Indus., Inc. v. Reneau*, 990 S.W.2d 292, 294 (Tex. App.CAustin 1998, no pet.).

### A.   *Reimbursement Gap is Contrary to Legislative Intent*

A[T]he overarching policy of [the Act is to provide] benefits to injured workers as soon as is practical.@ *Lopez v. Texas Workers=Comp. Ins. Fund*, 11 S.W.3d 490, 495 (Tex. App.CAustin 2000, pet. denied). Indeed, assurance of the prompt payment of benefits under the Act is the primary consideration, or *quid pro quo*, for employee participation in the workers= compensation system. *See Keng*, 23 S.W.3d at 349-50. The Act requires courts to construe its terms liberally in favor of injured workers; they should not adopt constructions that supply by implication restrictions on an injured worker=s rights not found in the plain language of the statute. *See id.*

The reimbursement provisions at issue in this case ultimately do affect this carefully balanced legislative scheme. The Act authorizes the Commission to order immediate benefit payments to be made to

6

claimants while their claims are being adjudicated at the Commission, and those payments must continue to be made until either the Commission or a court orders otherwise. *See Lopez*, 11 S.W.3d at 495. Requiring that benefits be paid while the claim is being adjudicated accomplishes the fundamental policy of immediately paying benefits to injured claimants. *See Lopez*, 11 S.W.3d at 494-95; *Texas Workers= Comp. Comm=n v. City of Bridge City*, 900 S.W.2d 411, 416 (Tex. App.CAustin 1995, writ denied). Here, Continental was ordered to, and did, pay benefits to Smith at all three administrative levels: the benefits review conference, the contested-case hearing, and finally pending the appeals panel=s decision.

To encourage compliance and make early payments more palatable to insurers, the legislature created a system for reimbursement of benefits subsequently found not to have been owed. These reimbursement provisions serve the objective of encouraging insurers to pay benefits quickly and Ato err in favor of payment.@ *Lopez*, 11 S.W.3d at 495. Early benefits payments will be repaid if, at any point during the adjudicative process, the benefits are found not to have been owed. *See id*. (interpreting post-1999 version of Act).

The legislature placed a nondiscretionary duty on the Commission to reimburse insurers from the Fund. At each point where the Act authorizes the Commission to order interlocutory payments to claimants, the legislature created a corresponding duty of reimbursement on the Fund.[4] Thus, a duty to reimburse corresponded to each authorization to compel early payment of benefits. The 1999 amendments

---

[4] Act approved May 24,1993, 73d Leg., R.S., ch. 269, ' 1, 1993 Tex. Gen. Laws 987, 1202 (repealed 1999) (formerly Tex. Lab. Code Ann. ' 410.032(b)); Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, ' 6.42(e), 1989 Tex. Gen. Laws 1, 60 (repealed 1999) (formerly Tex. Lab. Code Ann. ' 410.205(c)).

changed this piecemeal structure of the Act and consolidated the duty to reimburse in one blanket provision. *See* Tex. Lab. Code Ann. ' 410.209 (West Supp. 2002) (AThe . . . fund shall reimburse . . . for overpayments of benefits made under an interlocutory order or decision if that order or decision is reversed or modified . . . .@).[5] The payments in this case, however, were made before the statutory amendment, so the pre-1999 version of the Act controls this case.

## B.  History of the Dispute

The pre-1999 Act initially authorized interlocutory orders requiring payment of benefits at the benefits review conference found in subchapter B of the Act.[6] *Texas Builders*, 994 S.W.2d at 903. Subchapter B deals with the informal benefit review stage of the process.  Former section 410.032(b) required reimbursement if the interlocutory order was subsequently changed at the next agency level, which could be either a contested-case hearing or arbitration.

---

[5] AThe amendments clarify that the legislature does not intend any gap in reimbursement.@ *Everest Nat=l Ins. Co. v. Texas Workers=Comp. Comm=n*, No. 03-01-00631-CV, slip op. at 13 n.6, 2002 Tex. App. LEXIS 4464, at *18 n.7 (Tex. App.CAustin June 21, 2002, no pet. h.).

[6] Act approved May 24, 1993, 73d Leg., R.S., ch. 265, ' 1, 1993 Tex. Gen. Laws 987, 1202, *repealed*, Act of May 19, 1999, 76th Leg., R.S., ch. 955, ' 4, 1999 Tex. Gen. Laws 3696, 3697 (formerly section 410.032(b)).

The next authorization of interlocutory orders was found in subchapter E, which deals with appeals (of contested case hearing decisions) to an administrative appeals panel. Section 410.205(b) authorizes interlocutory orders for payment of benefits at this stage. The agency=s orders remain in effect during the period while an appeals panel=s decision is appealed to the courts. Tex. Lab. Code Ann. ' 410.205(b) (West Supp. 2002); *see also Texas Builders*, 994 S.W.2d at 904. Former section 410.205(c) likewise required reimbursement should a court subsequently overturn the appeals panel=s decision.[7]

Disputes arose about whether reimbursement was required for amounts paid while a contested-case hearing order was pending at the next level of the administrative process, the appeals panel. *See, e.g., Texas Builders*, 994 S.W.2d at 902. Subchapter D of the pre-1999 Act, which addresses the contested-case hearing stage, was silent as to *both* payment and reimbursement of benefits through the next stage of the administrative process. Subchapter D did not specify whether immediate and continued payment of any benefits found owing by the contested-case officer=s decision was required. A contested-case hearing officer was simply authorized to issue a written decision determining Awhether benefits are due.@ Nothing in subchapter D expressly mandated the payment of benefits. Nevertheless, the overall purpose of the Act required that interlocutory decisions of a contested-case officer were immediately and continually binding until modified or reversed. There was never a question about whether insurers were

---

[7] Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, ' 6.42(e), 1989 Tex. Gen. Laws 1, 60, (repealed 1999) (formerly Tex. Lab. Code Ann. ' 410.205(c)).

required to pay benefits while a claim was pending at the appeals panel level, but the Fund denied its concomitant duty to reimburse payments made during this stage.

Although nothing in the structure, language, or policy of the Act justified it, the Commission has for years interpreted the lack of explicit reimbursement language in subchapter D to mean that a Agap@ existed in the reimbursement provisions. The existence of the gap, the Commission concluded, meant that benefits paid while a contested-case hearing order was pending before the appeals panel need not be reimbursed.[8] Based on its own interpretation of the Act, the Commission refuses to reimburse insurers for amounts paid during this period. Consequently, the legislature amended the Act in 1999 to clarify its intent that reimbursement be available for all payments made under any order or decision of the Commission. *See* Tex. Lab. Code Ann. ' 410.209.

We hold that there is no gap in the reimbursement provisions of chapter 410 of the pre-1999 Act. We hold that the Commission=s refusal to reimburse insurers for payments made during the period between the contested-case hearing decision and the appeals panel=s decision is contrary to both the language of the statute and the overriding purpose of the Act. *See Texas Builders*, 994 S.W.2d 910. There is no language in the Act stating that the Commission is authorized to omit repaying benefits paid

---

[8] *See generally Texas Workers=Comp. Comm=n v. City of Bridge City*, 900 S.W.2d 411 (Tex. App.CAustin 1995, writ denied) (involving insurer=s challenge to constitutionality of such interpretation, and ultimately holding that, *assuming such statutory scheme*, legislature=s choice not to require reimbursement at this stage would not be unconstitutional); *see also Texas Workers=Comp. Comm=n v. Texas Builders Ins. Co.*, 994 S.W.2d 902 (Tex. App.CAustin 1999, pet. denied); *St. Paul Fire & Marine Ins. Co. v. Texas Workers=Comp. Comm=n*, 945 S.W.2d 886 (Tex. App.CAustin 1997, no pet.).

during this period.[9]  Had the legislature intended to treat payments and reimbursements differently during the appeals panel stage, it could have explicitly said so.

A gap does not make sense in this statutory scheme.  The legislature sought to encourage participation in the workers= compensation system by employers, employees, and insurers; that objective is frustrated if any of the participants risk forfeiture.  There is no intent shown in the Act to make the reimbursement provisions of chapter 410 a revenue-generating mechanism for the Fund.

The Commission=s reasoning unnecessarily truncates this chapter of the Act into a series of disjointed steps instead of the integrated statutory scheme it was intended to be.  Interlocutory orders to pay benefits remain in effect until further order of the Commission or a court.  *See Lopez*, 11 S.W.3d at 495.  We hold that a final decision, by either the Commission or a court, finding that certain benefits were not owed thereby authorizes the reimbursement of any benefits paid pursuant to any interlocutory order of the Commission.

## C.   Is Bridge City Stare Decisis for a Gap?

As authority for its position, the Commission cites this Court=s decision in *City of Bridge City*, as recognizing and approving of the Commission=s interpretation of the Act.  *See City of Bridge City*, 900 S.W.2d 411.  The Commission has misconstrued that opinion.  That case involved a constitutional

---

[9]  AA court [or an agency] may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute.@ *Public Util. Comm=n v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988).

challenge *to the Commission=s interpretation* of the reimbursement scheme. The workers=compensation insurer in that case challenged the unequal treatment of reimbursements, during the period between the contested-case hearing decision and the appeals panel=s decision, in relation to the other stages of the administrative process. *Id*. at 413. In deciding that case, this Court *assumed*, for the purposes of that appeal, that the Athe statutory reimbursement provisions created a >gap= or interim period during which the Fund could omit reimbursement.@ *See Everest*, slip op. at 12, 2002 Tex. App. LEXIS 4464, at *18.

This Court was not asked in *City of Bridge City* to address the propriety of the Commission=s interpretation of the Act. *See id.* The issue posed in that case was whether a reimbursement gap was unconstitutional. *City of Bridge City*, 900 S.W.2d at 413. We upheld the constitutionality of such a scheme because it was rationally related to the state=s legitimate interest in regulating workplace injuries and the legislature=s balancing of the interests of claimants and insurers. *Id.* at 416-17. *City of Bridge City* is not authority for the proposition that the pre-1999 version of the Act creates a gap in the Fund=s reimbursement obligation. *Everest*, slip op. at 13, 2002 Tex. App. LEXIS *18. In explaining our decision, this Court in *City of Bridge City* said:

> *Apparently, these provisions are construed* so that the carrier is not entitled to recover any overpayment made during the period between the date of the contested-case decision requiring payment and the date of the appeals-panel decision affirming that decision, even though the latter decision is reversed on judicial review. *Threatened by administrative penalties* if they do not pay benefits during the only period when reimbursement is not expressly secured by the statutory scheme, the [insurer] sued for declaratory judgment that the Act is unconstitutional.

12

*City of Bridge City*, 900 S.W.2d at 413 (emphasis added). A careful reading of the *City of Bridge City* opinion leads inexorably to the conclusion that it was the Commission=s interpretation of the Act and refusal to reimburse that created a *de facto* gap. In any event, *City of Bridge City* dealt with the issue of the constitutionality of a particular statutory scheme. It does not bind this Court to accept the Commission=s interpretation of the statute.

### D.   *Does Amendment Imply a Prior Gap?*

Lastly, the Commission argues that the fact that the legislature amended the Act in 1999 by deleting sections 410.032(b) and 410.205(c) and adding section 410.209 to Aremove the gap@ is an indication that the gap existed before the legislative action. The Commission=s argument is unconvincing. In this instance, it is just as likely that the legislature acted to clarify its intent that no reimbursement gap existed. It was the Commission that effectively created the Areimbursement gap@ controversy. *See id.* The legislature=s amendment to chapter 410 of the Act is no authority for the Commission=s refusal to reimburse insurers for payments made during the appeals panel stage of a case. The Commission acted beyond its statutory authority in concluding otherwise.

### CONCLUSION

For the reasons set forth above, we overrule the Commission=s issues on appeal and affirm the judgment of the district court.

13

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   August 8, 2002

Publish