# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00379-CV

### Chris M. Schade, M.D., Ph.D., Appellant

### v.

### Texas Workers' Compensation Commission; and Richard F. Reynolds, Executive Director,[1] Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN100093, HONORABLE JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

In this case, we consider the statutory authority of the Texas Workers' Compensation Commission to conduct a "desk" review of selected case files and certain billing and business practices of physicians who treat patients in the workers' compensation system. We also review the nature of "administrative subpoenas" and the proper standard of review of those subpoenas under

---

[1] The notice of appeal in this case named Leonard Riley, the previous executive director of of the worker's compensation commission, as an appellee. We have substituted the name of the current executive director, Richard F. Reynolds. *See* Tex. R. App. P. 7.2(a).

article I, section 9 of the Texas Constitution. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

Chris Schade is a licensed medical doctor who treats patients who have long-term pain. Among his patients, some have filed claims with the Texas Workers' Compensation Commission (the Commission).

On December 8, 2000, the Commission notified Schade by letter that the medical audit team of its compliance and practices division was conducting a "desk review of his services to workers' compensation claimants."[2] Beginning with a focus on five of Schade's patients, the medical audit team requested: (i) verification that those five patients were workers' compensation patients treated by Schade's practice; (ii) copies of Schade's initial evaluation, diagnoses, and treatment plans for those patients; (iii) their complete clinical files; (iv) a contact person with his office who will be available during normal business hours and able to answer questions about workers' compensation treatment and billing procedures; and (v) completion of an "audit questionnaire." The Commission further stated that the review "may include, but [will] not be limited to, a review of medical treatment, billing and payment records, and questions concerning [Schade's] regular business activities between August 1, 1999 and July 31, 2000." According to the

---

[2] Although not stated in the desk-review letter, the purpose of this audit was to determine if Schade was overprescribing narcotics. On appeal, Schade only challenges this justification as part of his claim that the review constitutes an impermissible regulation of the practice of medicine. He does not contend that this justification is outside the statutory authority of the Commission.

letter, the Commission considers failure or refusal to comply with a desk review to be an administrative violation.

The "audit questionnaire" is a questionnaire used by the Commission in all reviews of health-care providers concerning their business practices. The questionnaire inquires into general business practices, such as days and hours of operation, the staff organizational chart, the relationship between the physician and other physicians, the services provided by the practice, the physician's financial interest in other service providers, record-keeping procedures concerning workers' compensation claims, and the use in the medical practice of Commission publications and other medical references. It seeks information about the billing procedures of the practice but does not require production of actual billing documents.

Schade did not respond to the desk-review notification. Instead, he filed suit in district court, seeking declaratory and injunctive relief "to prevent an unconstitutional search" in violation of the Texas Constitution. *See* Tex. Const. art. I, § 9.[3] He also sought a declaration that the Commission lacks authority to conduct these desk reviews. *See* Tex. Lab. Code Ann. §§ 413.002, 414.002, 415.003 (West 1996). The court held a bench trial and in a final order denied Schade's claims for relief. In its findings of fact and conclusions of law, the court found that the Commission, through its compliance and practices division, has authority to conduct the desk reviews in question, that a desk review is not a warrantless search, and that the review does not violate article I, section 9 of the Texas Constitution. This appeal followed.

---

[3] He also claimed a violation of due process of law. *See* Tex. Const. art. I, § 3. However, he does not present this claim on appeal.

3

## DISCUSSION

In three issues, Schade argues that the Commission lacks statutory authority to conduct a desk review, that the desk review in question is a warrantless search that violates his right to be free from unreasonable search and seizure, and that the desk review constitutes an impermissible regulation of the practice of medicine. We will address each issue in turn.

### *Statutory Construction*

In his first issue, Schade challenges the district court's determination that the medical audit team has authority to conduct desk reviews on two grounds: lack of statutory authority on the part of the Commission to conduct a desk review and improper delegation of the authority from one division within the Commission to another.

Statutory construction is a matter of law, which we review *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). The primary rule of statutory interpretation is to find the intent of the legislature and construe the statute to give effect to that intent. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied). Disputed provisions are to be considered in context, not in isolation. *Texas Workers' Comp. Comm'n v. Continental Cas. Co.*, 83 S.W.3d 901, 905 (Tex. App.—Austin 2002, no pet.); *see also Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). Texas courts are to consider, among other factors, the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternative

constructions, even when a statute is not ambiguous on its face. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Union Bankers Ins. Co.*, 889 S.W.2d at 280.

In his attack on the statutory authority of the Commission, Schade first argues that the legislature, in granting authority to the Commission to "monitor" doctors, did not give authority to conduct a desk review. He reasons that the legislature expressly granted the Commission the authority to audit insurance companies and to monitor health care providers, but the Commission's desk review is an "audit"[4] that exceeds the scope of its authority. *Compare* Tex. Lab. Code Ann. § 413.013(2) (West 1996),[5] *and id*. § .013(4),[6] *with id*. § .015(b) (West 1996).[7] We disagree.

The powers of a commission include the powers delegated by the legislature in clear and express statutory language, together with any implied powers that may be necessary to perform a function or duty delegated by the legislature. *Texas Building Owners & Managers Ass'n v. Public Util. Comm'n*, 110 S.W.3d 524, 531 (Tex. App.—Austin 2003, pet. denied). We may imply that the

---

[4] The Commission itself characterizes the questionnaire an "audit questionnaire."

[5] "The commission by rule shall establish a program for the systematic monitoring of the necessity of treatments administered and fees charged and paid for medical treatments or services . . . to ensure that medical policies or guidelines are not exceeded." Tex. Lab. Code Ann. § 413.013 (West 1996).

[6] "The commission by rule shall establish a program to increase the intensity of review for compliance with the medical policies or fee guidelines for any health care provider that has established a practice or pattern in charges and treatments inconsistent with the medical policies and fee guidelines." *Id*. § 413.013(4) (West 1996).

[7] "The commission shall provide by rule for the review and audit of the payment by insurance carriers for charges for medical services provided under this subtitle to ensure compliance of health care providers and insurance carriers with the medical policies and fee guidelines adopted by the commission." *Id*. § 413.015(b) (West 1996).

legislature intended that a commission have whatever power is reasonably necessary to fulfill a function or perform a duty that the legislature has expressly placed in the agency. *Id*.; *see also Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 797 (Tex. App.—Austin 1993, no writ); *Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 719 (Tex. App.—Austin 1992, writ denied).

The legislature directed the Commission to "monitor health care providers . . . to ensure the compliance of those persons with rules adopted by the commission relating to health care, including medical policies and fee guidelines." Tex. Lab. Code Ann. § 413.002(b). To carry out this duty, the Commission shall establish "a program for the systematic monitoring of the necessity of treatments administered and fees charged and paid for medical treatments or services, including the authorization of prospective, concurrent, or retrospective review under the medical policies of the commission to ensure that medical policies or guidelines are not exceeded." *Id*. § 413.013(2). "In monitoring health care providers who serve as designated doctors under [the Workers' Compensation Act], the [medical review] division [of the Commission] shall evaluate the compliance of those providers with this subtitle and with rules adopted by the commission relating to medical policies, fee guidelines, and impairment ratings." *Id*. § 413.002(c).

When we consider the desk-review letter and the questionnaire, we discern that the Commission is seeking information concerning: (i) the treatment of five specific workers' compensation patients; (ii) general medical practice operations and business interests; and (iii) billing and record-keeping practices concerning workers' compensation claims. These questions focus on the treatments administered and fees charged and paid for medical treatments or services.

6

They also seek to review general practice operations in the context of the provision of workers' compensation services. In light of the language used by the legislature in the statutes, we can only conclude that these categories are reasonably related to ensuring compliance with the medical policies and fee guidelines of the Commission. *See id*. §§ 413.002(b)-(c), .013(2).[8]

Next, Schade argues that the legislature granted the power to monitor health-care providers only to the *medical review division* of the Commission. *See id*. § 413.002. Because the medical audit team of the *compliance and practices division* is attempting to conduct the desk review at issue in this case, he contends that the medical audit team's actions result from an impermissible "sub-delegation" of statutory power within the Commission. *See Lipsey v. Texas Dep't of Health*, 727 S.W.2d 61, 64-65 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (considering whether express and implied subdelegation of duties to agency employees is authorized). We disagree.

A commission is composed solely of the members of the commission to whom the legislature delegates authority. *See Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948). A commission may hire employees to carry out its delegated functions, if such power is provided by statute. *See id*. at 457. Where a statute entrusts specified functions to a commission, the legislature presumably intends that only that commission will exercise the delegated functions. *Lipsey*, 727 S.W.2d at 64. The commission may not subdelegate assigned functions to its employees. *Id*. To

---

[8] Schade focuses on the Commission's use of the word "audit" in the questionnaire and attempts to distinguish between the power to "audit" and the power to "monitor." First, we note that the word "audit" appeared only in the title of the questionnaire. The letter sent by the Commission refers only to a "desk review" or a "review." Second, we find it unnecessary to distinguish between the power to monitor and the power to audit because, regardless of the description, we find that the inquiry the Commission actually attempted to initiate, by whatever words it chose to describe that inquiry, falls within the language of the statute.

do so would mean that the Commission acted outside of its statutory authority, and its employees' actions would be invalid for want of authority. *Id*.

The Workers' Compensation Commission "is composed of six members appointed by the governor with the advice and consent of the senate." Tex. Lab. Code Ann. § 402.001 (West 1996). The Commission itself has the delegated authority to implement and enforce the Workers' Compensation Act. *See id*. § 402.061 (West 1996). The executive director of the Commission has all of the powers of the Commission except for rulemaking and policy-setting powers. *See id*. § 402.041 (West 1996). The Commission must have at least four divisions in order to fulfill its duties. *See id*. § 402.021(a) (West Supp. 2004). Although each of these divisions has different functions from the other, the "executive director may allocate and reallocate functions among the divisions." *Id*. § 402.021(b).

The legislature delegated the duty to monitor health care providers to the Commission in creating the duties of the Commission's division of medical review. *See id*. § 413.002. However, we find the reallocation of the "medical audit" functions from the medical review division to the compliance and practices division to be authorized by statute. *See id*. § 402.021(b). There can be no subdelegation issue when the statute itself expressly gives the Commission or its executive director the flexibility to allocate functions among the Commission's employees. We overrule Schade's first issue.

***Warrantless Search***

In his second issue, Schade argues that the desk review and the request of information through the "audit questionnaire" constitute an unreasonable search and seizure in violation of the

8

Texas Constitution. *See* Tex. Const. art. I, § 9. In response, the Commission argues that, at most, the desk review letter and audit questionnaire are forms of an "administrative subpoena." *See Sinclair v. Savings & Loan Comm'r*, 696 S.W.2d 142, 145, 151-52 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

The district court made a conclusion of law that "the desk review is not a warrantless search, but is, rather, a legitimate request for information." We review the district court's conclusions of law *de novo*. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). When conducting a *de novo* review, we exercise our own judgment and redetermine each issue of fact and law. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). In such a review, we accord the original court's decision no deference. *Id.*

We begin by noting that on some occasions the legislature expressly grants an agency the power to issue an administrative subpoena and specifies the procedure by which a subpoena will issue. *See, e.g.*, Tex. Gov't Code Ann. § 2001.089 (West 2000) (when agency has contested case pending, allowing that agency to issue subpoena addressed to sheriff or constable); Tex. Fam. Code Ann. § 231.303 (West 2002) (allowing Title IV-D agency to issue administrative subpoenas ordering individuals or entities to furnish information necessary to carry out the purposes of child support enforcement); Tex. Fin. Code Ann. § 59.010 (West Supp. 2004) (defining "administrative subpoena" as a valid and enforceable subpoena requesting customer records, issued by government agency exercising investigatory or adjudicative functions with respect to matter within agency's jurisdiction); Tex. Occ. Code Ann. § 153.007 (West 2004) (allowing board of medical examiners

9

to issue subpoenas to compel attendance of witness and production of books, records, and documents, and allowing subpoena service either personally by board investigators or by certified mail); *id*. § 556.101 (West 2004) (dispensing with warrant requirement for administrative subpoenas issued by board of pharmacy). In addition, Texas case law does not define the nature of an administrative subpoena outside the context of those subpoenas expressly permitted by statute. *See, e.g.*, *Pelt v. State Bd. of Ins.*, 802 S.W.2d 822, 826 (Tex. App.—Austin 1990, no writ) (discussing subpoenas issued in contested case under administrative procedures act); *id*. at 831-32 (Powers, J., concurring) (same); *Sinclair*, 696 S.W.2d at 145-47, 148-49 (considering statute authorizing savings and loan commissioner to require production of records, contracts, or other documents by court order).

Schade originally brought this suit only under the search and seizure provision of the Texas Constitution. *See* Tex. Const. art. I, § 9. A plain reading and comparison of the language of the Fourth Amendment of the United States Constitution and our constitutional provision reveals no substantive difference between the two. *See Hill v. State*, 951 S.W.2d 244, 248 (Tex. App.—Houston [14th Dist.] 1997, no pet.). As a result, and because Texas case law does not fully describe the nature of an administrative subpoena, we begin by considering the federal approach to this issue. *Id*.; *see also Sinclair*, 696 S.W.2d at 151.

In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), the United States Supreme Court considered a similar request for information from a federal agency. In that case, the parties subject to the request claimed that a federal agency was attempting to conduct "general

10

fishing expeditions" into their books, records, and papers, in order to secure evidence that they had violated the federal Fair Labor Standards Act. *Id*. at 189, 195. That agency was acting without a prior charge or complaint but simply to secure information upon which to base one, allegedly in violation of the Fourth Amendment's search and seizure provisions. *Id*. at 195. The Court found that Congress had authorized the agency administrator to conduct a preliminary investigation of possible violations. *Id*. at 214. The Court then held that the agency administrator had the authority "to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers." *Id*. In case of refusal to obey the subpoena, he also had a right to the aid of the district court in enforcing it. *Id*. Finally, it held that no constitutional provision forbids Congress from giving authority to an agency to compel the production of business records and papers in that way. *Id*.

Thus, we find that the Fourth Amendment and its Texas counterpart at most guard against abuse only by way of too much indefiniteness or breadth in the things required to be "particularly described," if the agency request for the production of corporate records and papers is one the requesting agency is authorized to make and the materials specified are relevant. *See id*. at 208. The overriding standard is the disclosure sought shall not be unreasonable. *See id*. It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. *See id*. at 209. It is enough that the investigation be for a lawfully authorized purpose, within the power of the legislature to command. *See id*.

The Workers' Compensation Act does not direct how the Commission is to perform its monitoring duties, except that the Commission by rule shall establish procedures to enable the

11

Commission "to compel the production of documents." *See* Tex. Lab. Code Ann. § 413.052 (West 1996). The Commission's rule describes the documents the Commission would seek and the procedure of a review. *See* 28 Tex. Admin. Code § 134.900 (2003). It also provides a graduated level of intensity of review. *See id.* § 134.900(g).

We agree with the Commission that the request in this case is better characterized as a request for production of documents than as a search and thus is akin to an administrative subpoena. The legislature has expressly authorized the Commission to conduct these investigations without filing charges. In addition, the Commission requested documents and answers to questions. It is not conducting an on-site inspection. *See, e.g.*, Op. Tex. Att'y Gen. No. JC-204 (2000) (advising that polygraph examiners board may not conduct warrantless on-site inspections of an individual polygraph examiner not initiated by consumer-filed, formal complaint); Op. Tex. Att'y Gen. No. JC-274 (2000) (same as to powers of board of podiatric medical examiners). The Dallas court relied on *Oklahoma Press Publishing Co.* to articulate a detailed test for reviewing administrative subpoenas. We will treat the request in this case in the same way and analyze its constitutionality under the same test. *See Sinclair*, 696 S.W.2d at 151-52.

The requirements for administrative subpoenas are these: (1) the agency must conduct its investigation pursuant to an authorized purpose, and the subpoena must be relevant to that purpose; (2) the agency must follow the necessary statutory procedures; (3) the subpoena must describe the documents sought with adequate particularity, meaning that the scope of its demand for documents must be adequate, but not excessive, for the purposes of the inquiry; (4) the subpoena

12

must not unnecessarily or excessively seek information that the agency already possesses; and (5) the respondent may show that the subpoena is unnecessarily burdensome. *Id*. (citations omitted).

We have already considered the statutory requirements for a desk review and found them adequate. This satisfies the first and second steps of the *Sinclair* test. In relation to the third step, the request and the questionnaire focused on two areas of inquiry: information related to five workers' compensation patients and information concerning Schade's medical practice and billing procedures. The inquiry into the treatment of the five patients directly concerns compliance with the Workers' Compensation Act in relation to those five patients. In addition, whether Schade's treatment and billing practices relating to those five patients is similar to or different from that of patients not in the workers' compensation system can only be determined by inquiring into the general business operations of the practice. The request letter and the questionnaire sets out the exact documentation the Commission is seeking with particularity. As well, the scope of the inquiry is reasonably related to evaluating compliance with the Workers' Compensation Act. Thus, we find that the request and questionnaire meet the requirements of the third prong of the *Sinclair* test.

As to the fourth step, Schade believes that the Commission already possesses this information. In particular, he argues that health care providers submit similar patient information as part of filing a medical bill with the insurance providers and that the Commission has the power to seek this information from those insurance providers. *See* Tex. Lab. Code Ann. §§ 413.015, 414.002 (West 1996); 28 Tex. Admin. Code §§ 133.1(a)(3), .100 (2003).

Schade's argument fails in two ways. First, the Commission may initially identify the need for a review from data it receives from insurance companies regarding individual claims.

13

To then restrict its review to that source data would undermine the purposes of conducting a review, for the Commission would never be able to verify the data it has or to compare its impressions with the source data. Second, even if the Commission "has access to [this information] through a multitude of consulting contracts," as Schade asserts, because Schade has centralized records on these patients, a comprehensive view of Schade's practice and his treatment and billing related to five particular patients can best be found through Schade's own records. To require the Commission to piece together from a variety of sources information that statutes permit it to gather from one central source would put an immense strain on the Commission's ability to fulfill its duties. *Sinclair* does not test the validity of administrative subpoenas on whether a commission could have the information sought by other means. Rather, the Commission may not "unnecessarily or excessively seek information" that the Commission already possesses. *See Sinclair*, 696 S.W.2d at 151.

The information the Commission seeks in this case seems necessary to its review, as we have discussed above. Although the review reaches beyond the records of the five listed patients, it seeks information to put those records in context with the general procedures Schade uses in his practice. We find the request within the scope of that focus and not excessive. Thus, the Commission's request meets the requirements of the fourth prong.

Finally, we turn to the fifth step of *Sinclair*—that the respondent may show that the subpoena is unnecessarily burdensome. On this issue, Schade offered two comments to the district court. First, he stated that "when I looked at the questionnaire, it was so broad that it appeared to be a fishing expedition. . . . In other words, I couldn't identify an issue I was aware of, what they

14

typically will audit; and I couldn't tell what they were looking for." Second, he believed that it would require forty to eighty hours to compile the information requested. When we consider the request and the questionnaire, however, we can determine what documentation the Commission is seeking. The request in this case meets the requirements of the fifth *Sinclair* prong.

Having found both that the request in this case is best considered an administrative subpoena and that the request satisfies the five prongs of the *Sinclair* test, we conclude that the request does not violate constitutional protections against unreasonable searches and seizures. We overrule Schade's second issue.

### *Regulation of the Practice of Medicine*

In his third issue, Schade argues that the request and the audit questionnaire constitute an impermissible regulation of practice of medicine. However, he did not allege this issue in his petition in district court, nor did he argue it to that court.[9] "As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal." *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). Because this issue was not presented to the district court, Schade waived his arguments. We overrule his third issue.

---

[9] At the hearing in district court, Schade established that the review was conducted on the suspicion that he was overprescribing narcotics. On appeal, he argues that justification itself constitutes the regulation of the practice of medicine. He never presented this argument to the district court. At oral argument, Schade admitted that he only raised this issue to support his argument that the Commission has no rational basis for conducting the review, an argument that may have been relevant were we to have found that the review was not an "administrative subpoena" but a warrantless search. *See, e.g.*, *Donovan v. Dewey*, 452 U.S. 594, 599 (1981).

15

## CONCLUSION

Because we overrule Schade's issues on appeal, we affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   April 8, 2004