# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00154-CV

**City of Marshall and Texas Commission on Environmental Quality (formerly Texas Natural Resources Conservation Commission), Appellants**

**v.**

**City of Uncertain; Caddo Lake Area Chamber of Commerce and Tourism; Greater Caddo Lake Association; Caddo Lake Institute; John T. Echols; and Barry L. Bennick, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN2-01217, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

This is a suit for judicial review of a Texas Commission on Environmental Quality (the "Commission") order granting an amendment to a water right permit submitted by the City of Marshall ("Marshall") without providing the opportunity for a contested-case hearing to the City of Uncertain, the Caddo Lake Area Chamber of Commerce and Tourism, the Greater Caddo Lake Association, the Caddo Lake Institute, John T. Echols, and Barry L. Bennick (collectively, "appellees"). The district court reversed the Commission's order and remanded the cause to the Commission to provide appellees a contested-case hearing. The Commission and Marshall appeal from the district court's judgment. We will affirm in part and reverse and render in part.

## BACKGROUND AND PROCEDURE

Marshall is located in Harrison County, Texas, which is located partially within the Cypress Creek Basin[1] and partially within the Sabine River Basin. In 1947, the Texas Board of Water Engineers granted Marshall a water permit authorizing it to divert water from Cypress Creek.[2] In 1986, following a water rights adjudication proceeding, the Texas Water Commission issued Marshall a certificate of adjudication[3] that authorized Marshall to divert 16,000 acre-feet of water from Cypress Creek for municipal purposes.

In 2001, Marshall applied to the Commission for an amendment to Marshall's permit. Marshall sought recognition of its historical practice of providing water to its customers in that portion of Harrison County located within the Sabine River Basin in addition to its existing authorization to provide water to its customers in that portion of Harrison County located within the Cypress Creek Basin (the "interbasin transfer"). Marshall also requested authorization to use water for industrial use, in addition to its existing authorization to use water for municipal use.[4]

---

[1] Cypress Creek flows into Caddo Lake, which has been designated a "Wetland of International Importance" by the Ramsar Bureau, an agency established by the international treaty known as the Ramsar Convention on Wetlands. The U.S. Fish & Wildlife Service has assigned the highest priority level for acquisition and preservation to the Caddo Lake wetlands.

[2] Marshall's permit was amended in both 1957 and 1970.

[3] A certificate of adjudication is essentially a water right permit that has been subjected to a water rights adjudication proceeding. *See* Water Rights Adjudication Act, Tex. Water Code Ann. §§ 11.301-.341 (West 2000 & Supp. 2003). For ease of reference, and because the principles we will discuss apply equally to water right permits and certificates of adjudication, we will refer to Marshall's certification of adjudication as a permit.

[4] Commission rules define "municipal use" as "[t]he use of potable water within a community or municipality and its environs for domestic, recreational, commercial, or industrial purposes." 30 Tex. Admin. Code § 297.1(30) (2003). Under the 1986 permit, Marshall was

2

The Commission determined that Marshall's amendment was not subject to the general notice and hearing procedures of sections 11.132 and 11.133 of the Texas Water Code for two reasons. *See* Tex. Water Code Ann. §§ 11.132-.133 (West 2000). First, the Commission determined that Marshall's request for recognition of its practice of selling water to customers in both the Cypress Creek Basin and the Sabine River Basin was the exact type of transfer contemplated by the legislature when it drafted section 11.085(v)(4) of the water code. *See id.* § 11.085(v)(4) (West Supp. 2003).[5] The Commission determined that under the language of section

---

permitted to sell water for industrial use, but only after treating the water to make it potable. Obtaining an authorization for industrial use would allow Marshall to sell untreated water to industrial users.

[5] Section 11.085 of the water code is entitled "Interbasin Transfers," and subsection (a) provides:

> No person may take or divert any state water from a river basin in this state and transfer such water to any other river basin without first applying for and receiving a water right or an amendment to a permit, certified filing, or certificate of adjudication from the commission authorizing the transfer.

Tex. Water Code Ann. § 11.085(a) (West Supp. 2003). Subsections (b) through (u) are provisions involving penalties, notice, public meetings, fees, and other requirements. *See id.* § 11.085(b)-(u). The applicable portion of subsection (v) provides:

> The provisions of this section, except subsection (a), do not apply to:
>
> . . .
>
> (4) a proposed transfer from a basin to a county or municipality or the municipality's retail service area that is partially within the basin for use in that part of the county or municipality and the municipality's retail service area not within the basin.

*Id.* § 11.085(v)(4).

3

11.085(v)(4), Marshall's requested interbasin transfer was exempted from the requirements of notice and the opportunity for a contested-case hearing.

Second, the Commission determined that Marshall's request for the addition of an industrial use was an amendment covered by section 11.122(b) of the water code. *See id.* § 11.122(b) (West Supp. 2003).[6] Except for an amendment that "increases the amount of water authorized to be diverted or the authorized rate of diversion," section 11.122(b) *mandates* approval of amendments that "will not cause adverse impact on other water right holders or the environment on the stream of greater magnitude than under circumstances in which the permit . . . that is sought to be amended was fully exercised according to its terms and conditions as they existed before the requested amendment." *Id.* According to the Commission's reading of section 11.122(b), the determination of whether an amendment will have "adverse impacts on other water right holders or the environment on the stream" is to be made by the Commission, without notice or a hearing. Therefore, following a review of Marshall's application, the Commission determined that approval of Marshall's amendment application would not result in a greater magnitude of adverse impacts.

---

[6] Section 11.122(b) provides:

> Subject to meeting all other applicable requirements of this chapter for the approval of an application, an amendment, except an amendment to a water right that increases the amount of water authorized to be diverted or the authorized rate of diversion, shall be authorized if the requested change will not cause adverse impact on other water right holders or the environment on the stream of greater magnitude than under circumstances in which the permit, certified filing, or certificate of adjudication that is sought to be amended was fully exercised according to its terms and conditions as they existed before the requested amendment.

*Id.* § 11.122(b) (West Supp. 2003).

4

Following these two determinations, the executive director of the Commission approved Marshall's requested amendment without published or mailed notice of the application.[7] On March 25, 2002, the Commission mailed notice of the executive director's final approval of Marshall's application to interested parties. On April 4, 2002, appellees filed a motion to overturn the executive director's decision and a motion for rehearing with the Commission. The Commission subsequently denied both motions. Appellees then sued both the Commission and Marshall in the district court. In granting appellees' motion for summary judgment and in denying the Commission's and Marshall's motions and cross-motions for summary judgment, the district court concluded that the Commission erred by determining that Marshall's amendment application could be approved without notice or the opportunity for a contested-case hearing and by allowing the executive director to issue the order amending Marshall's water right permit.

The Commission and Marshall now argue in three issues that the district court erred in determining that (1) Marshall's application for authorization of an interbasin transfer required notice and the opportunity for a contested-case hearing, (2) Marshall's application for an industrial use required notice and the opportunity for a contested-case hearing, and (3) the Commission could not allow the executive director to issue the order amending Marshall's permit. The Commission separately argues that its actions were required by statute and therefore do not fall within the category

---

[7] The Commission determined that, under section 5.122 of the water code, it could delegate the power to approve Marshall's application to the executive director because, according to the Commission, the application was uncontested and did not require an evidentiary hearing. *See id.* § 5.122(a) (West 2000).

of individualized governmental determinations that would entitle appellees to argue a constitutional due process deprivation.[8]

## STANDARD OF REVIEW

**Summary Judgment**

When both parties move for summary judgment, each party must carry its own burden as the movant. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993); *Jun v. Lloyds & Other Various Insurers*, 37 S.W.3d 59, 62 (Tex. App.—Austin 2000, pet. denied). When the district court grants one party's motion and denies the other's, the reviewing court should determine all questions presented and render the judgment that the court below should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 322 (Tex. App.—Austin 2002, no pet.). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision *de novo*. *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.); *see Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Because appellees' motion for summary judgment was based on two grounds, we must affirm the judgment if either of the grounds has merit. *See id.*

---

[8] Because we determine that the Commission incorrectly applied sections 5.122(a) and 11.122(b) of the water code, we need not address this issue.

**Statutory Construction**

Because this appeal requires us to interpret sections 11.085(v)(4) and 11.122(b) of the Texas Water Code, we restate the basic principles of statutory construction. Interpreting statutes is a legal matter also subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *Texas Workers' Comp. Comm'n v. Continental Cas. Co.*, 83 S.W.3d 901, 904 (Tex. App.—Austin 2002, no pet.). The overriding goal of statutory interpretation is to determine the legislature's intent. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. § 311.011 (West 1998); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002).

Statutes are interpreted by considering the entire statute, not just disputed provisions. *Thomas v. Cornyn*, 71 S.W.3d 473, 481 (Tex. App.—Austin 2002, no pet.). Disputed provisions are to be considered in context, not in isolation. *Continental Cas. Co.*, 83 S.W.3d at 904; *see Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). When interpreting statutes, courts consider such things as the circumstances under which the statute was enacted, former statutory provisions on the same or similar subjects, and the consequences of a particular construction. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). We do not give one provision an interpretation that is inconsistent with the other provisions of the act. *Id.*

## DISCUSSION

The district court concluded that the Commission erred in determining that Marshall's application could be approved without notice or the opportunity for a contested-case hearing and by

7

allowing the executive director to issue the order granting Marshall's amendment. We will address the propriety of each of these rulings separately.

**Notice and Hearing**

Appellees argue that Marshall's application for a permit amendment, which requested both a recognition of an interbasin transfer and an authorization for an industrial use, was subject to notice and hearing requirements. Because each requested change implicates a separate section of the water code—sections 11.085(v)(4) and 11.122(b), respectively—we will address each issue in turn.

*The Interbasin Transfer*

At issue first is whether Marshall's request for authorization to transfer water from the Cypress Creek Basin and to use the water in both the Cypress Creek Basin and the Sabine River Basin triggered the notice and hearing requirements found in section 11.085 of the water code. *See* Tex. Water Code Ann. § 11.085. Marshall's application requested an amendment to its permit that would "authorize the City to use its rights in that portion of Harrison County located within the Sabine River Basin, in addition to its current authorization to use such water in that portion of Harrison County located within the Cypress Creek Basin."[9]

Appellees argue that this requested amendment required notice and the opportunity for a hearing under the water code. Section 11.085(a) of the water code states that no person may

---

[9] The approved amendment provided that Marshall could divert water "from Cypress Creek for municipal and industrial purposes within those portions of Harrison County that are located within the Cypress Creek Basin as well as those portions of Harrison County that are located within the Sabine River Basin."

8

transfer water from one river basin to another river basin without receiving authorization. *Id.* § 11.085(a). Subsections (b) through (u) are provisions involving penalties, notice, public meetings, fees, and other requirements. *See id.* § 11.085(b)-(u). Subsection (v) provides that "the provisions of this section, except subsection (a)"—in other words, the provisions of subsections (b) through (u)—do not apply to:

> (4) a proposed transfer from a basin to a county or municipality or the municipality's retail service area that is partially within the basin for use in that part of the county or municipality and the municipality's retail service area not within the basin.

*Id.* § 11.085(v)(4).

All parties agree that under certain circumstances—specifically, the exemptions laid out in subsection (v)—an application for an amendment authorizing an interbasin transfer may be granted without adhering to the notice and public hearing requirements. Appellees argue, however, that Marshall's request for an interbasin transfer authorization in this case *was* subject to notice and hearing requirements for two reasons. First, appellees argue that because Marshall's application also sought an authorization for industrial use in addition to an interbasin transfer, Marshall's amendment cannot properly be disposed of under the language of section 11.085(v)(4). Because we believe that Marshall's application can, and should, be bifurcated into two parts—the interbasin transfer and the industrial use—and because each part implicates a separate section of the water code, we will address Marshall's request for an industrial use in our discussion of section 11.122(b) below.

Appellees' second argument is that the exception found in section 11.085(v)(4) does not apply to Marshall because Marshall desires to sell water outside of its "retail service area."

9

Appellees argue that, because Marshall sought to sell water outside of its city limits, Marshall cannot qualify for the section 11.085(v)(4) exception because Marshall requests a transfer not within its retail service area.

Although "retail service area" is not defined in the water code, nothing in the code suggests that a municipality's retail service area must be restricted to its city limits. Appellees further contend, however, that because there is no showing that the entirety of Harrison County is within Marshall's retail service area, Marshall should not be allowed to use the section 11.085(v)(4) exception as a way to gain access to new customers outside of its city limits.[10] What this argument overlooks, however, is that the amendment request was designed to recognize Marshall's historical practice of selling water in *both* the Cypress Creek Basin and the Sabine River Basin. Acceptance of appellees' argument that a municipality's retail service area must be the same both before and after an amendment would vitiate the underlying purpose of section 11.085(v)(4), which is to streamline the approval process and forego unnecessary hearings where a municipality seeks authorization for interbasin transfers within the municipality's retail service area. Therefore, without evidence in the record that this amendment was outside of Marshall's retail service area, we agree with the Commission that section 11.085(v)(4) applies.

Because section 11.085(v)(4) applies, Marshall's application for an interbasin transfer authorization is not subject to the notice and hearing requirements found in subsections (b) through

---

[10] For example, appellees point specifically to Marshall's proposed sale of water to a power plant located in Harrison County outside of Marshall's city limits and located in the Sabine River Basin rather than the Cypress Creek Basin.

(u) of section 11.085. *See* Tex. Water Code Ann. § 11.085(b)-(u).[11] We therefore sustain the point of error and hold that, because the interbasin transfer was not subject to notice and hearing requirements, the district court erred in granting appellees' revised motion for summary judgment in this regard. Next, we turn to the issue of whether the request for an industrial use requires notice and the opportunity for a hearing.

### *Addition of an Industrial Use*

Appellees contend that section 11.122(b) of the water code requires compliance with the notice and hearing provisions found in sections 11.132 through 11.134. *See id.* §§ 11.122(b), .132-.134 (West 2000 & Supp. 2003). The Commission and Marshall respond that section 11.122(b) *mandates* approval of Marshall's amendment, and therefore notice and hearing are unnecessary. Section 11.122(b) provides:

> Subject to meeting all other applicable requirements of this chapter for the approval of an application, an amendment, except an amendment to a water right that increases the amount of water authorized to be diverted or the authorized rate of diversion, shall be authorized if the requested change will not cause adverse impact on other water right holders or the environment on the stream of greater magnitude than under circumstances in which the permit, certified filing, or certificate of adjudication that is sought to be amended was fully exercised according to its terms and conditions as they existed before the requested amendment.

*Id.* § 11.122(b).

---

[11] All parties agree that if an exception in section 11.085(v) applies, then an amendment is not subject to the general notice and hearing requirements found elsewhere in the water code. *See* Tex. Water Code Ann. §§ 11.132-.134 (West 2000 & Supp. 2003).

The appellees' argument focuses on the very first phrase in the statute: "Subject to meeting all other applicable requirements of this chapter for the approval of an application. . . ." *See id.* Specifically, appellees argue that sections 11.132, 11.133, and 11.134 are "applicable" sections that must be satisfied. *See id.* §§ 11.132-.134. Section 11.132 lists the notice procedure and requirements, section 11.133 describes the hearing,[12] and section 11.134 provides the requisite proof that must be presented in a contested-case hearing before the Commission may grant an application. *See id.* Appellees argue that because the requirements for an application are set out specifically, the Commission erred in not granting the request for a contested-case hearing.

The Commission's view of section 11.122(b) differs. The Commission's focus is directed primarily to the language that *mandates* that the Commission "shall" authorize the amendment. In the Commission's view, if the amendment application does not request an increase in the amount of water to be diverted or an increase in the rate of diversion of water, then the Commission is *required* by the language of the statute to grant the amendment.

Appellees rejoin by pointing to the language of the statute that requires that the amendment be authorized only "*if* the requested change will not cause adverse impact on other water

---

[12] Section 11.133 provides:

> At the time and place stated in the notice, the commission shall hold a hearing on the application. Any person may appear at the hearing in person or by attorney or may enter his appearance in writing. Any person who appears may present objection to the issuance of the permit. The commission may receive evidence, orally or by affidavit, in support of or in opposition to the issuance of the permit, and it may hear arguments.

*Id.* § 11.133.

12

right holders or the environment on the stream of greater magnitude than under circumstances in which the permit . . . that is sought to be amended was fully exercised according to its terms and conditions as they existed before the requested amendment." *Id.* § 11.122(b) (emphasis added). The appellees argue that this determination can be made only after the opportunity to present evidence at a contested-case hearing.

The Commission responds that where, as here, it must view the amendment under an assumption of maximum permitted use, as opposed to actual use, it would be *impossible* for appellees to meet their burden of proof at a contested-case hearing. Thus, the Commission argues that a contested-case hearing is unnecessary under the facts and circumstances presented here. Consequently, the Commission argues it acted correctly in handling this case in summary fashion without a hearing.

Finally, the Commission argues that in the first clause of the statute, the key word is "applicable." The Commission contends that the notice and hearing requirements of sections 11.132 and 11.133 are no longer "applicable" because, according to the Commission, it is bound to grant the amendment under the facts of this case. This final linchpin of the Commission's argument, however, is missing from the statute. We have been unable to find any authority for the proposition that upon initial submission of an application, the Commission could dispense with the notice and contested-case hearing requirements of the statute based upon a preemptive decision that the application will eventually be approved. Indeed, evidence presented at a contested-case hearing and an examination of whether one party or the other has shouldered its burden of proof are the exact foundational requirements that allow the Commission to make a reasoned decision regarding the

13

requested application. The Commission has failed to cite, and we have been unable to find, any authority for the proposition that the contested-case hearing provisions of section 11.133 are applicable to all new permit applications but are somehow inapplicable to applications for amendments under section 11.122(b).[13]

This record is devoid of any evidence that water right holders or the environment on the stream will not be affected. The Commission has apparently made this determination on its own without the benefit of *any* evidentiary record. Therefore, we overrule the Commission's points in this regard and affirm the district court's conclusion that section 11.122(b) entitles appellees to an evidentiary hearing on Marshall's request for an industrial use.

**Power of the Executive Director to Act**

Finally, the district court ruled that the Commission could not allow the executive director to issue the order amending Marshall's permit. The Commission determined that, under section 5.122 of the water code, it could delegate the power to approve Marshall's application to the

---

[13] The legislature has clearly and expressly stated that notice and hearing are not required in other portions of the water code. *See, e.g.*, Tex. Water Code Ann. § 5.501(b) (West 2000) (Commission may issue emergency order "without notice or hearing"); *id.* § 5.513(b) (West 2000) (providing hearing to affirm, modify or set aside emergency order "adopted without notice or hearing"); *id.* §11.131 (West 2000) (entitled "Examination and Denial of Application Without Hearing"); *id.* § 11.1311 (West 2000) (entitled "Approval of Certain Applications Without Hearing" and concerning reissuance of abandoned, voluntarily cancelled, or forfeited permits for reservoir projects); *id.* § 11.176(c) (West 2000) (permit, certified filing, or certificate of adjudication for a term shall expire according to its terms "without notice or hearing"); *see also id.* § 11.085(v) (notice and hearing provisions of subsections (b) through (u) do not apply to certain interbasin transfers). We find persuasive that the legislature clearly stated its intent to waive the notice and hearing requirements in other portions of the water code, but chose not to include comparable language in section 11.122(b). *See id.* § 11.122(b).

14

executive director because, according to the Commission, the application was uncontested and did not require an evidentiary hearing. *See* Tex. Water Code Ann. § 5.122(a) (West 2000). Section 5.122(a) provides:

> (a) The commission by rule or order may delegate to the executive director the commission's authority to act on an application or other request to issue, renew, reopen, transfer, amend, extend, withdraw, revoke, terminate, or modify a permit, license, certificate, registration, or other authorization or approval if:
>
> (1) required notice of the application or request for the authorization or approval has been given;
>
> (2) the holder of or applicant for the authorization or approval agrees in writing to the action to be taken by the executive director; *and*
>
> (3) the application or request:
>
> > (A) is uncontested *and* does not require an evidentiary hearing; or
> >
> > (B) has become uncontested because all parties have agreed in writing to the action to be taken by the executive director.

*Id.* § 5.122(a) (emphasis added).

At issue is whether subsection (a)(3)(A) has been satisfied.[14] This subsection states that the Commission can delegate power to the executive director to approve an application only if the application "is uncontested *and* does not require an evidentiary hearing." *Id.* § 5.122(a)(3)(A) (emphasis added). Because Marshall's application for an amendment required an evidentiary hearing as to the addition of an industrial use, the conditions of subsection (a)(3)(A) have not been satisfied.

---

[14] It is undisputed that subsection (a)(3)(B) does not apply. Therefore, the Commission was empowered to delegate authority to the executive director under section 5.122 only if subsection (a)(3)(A) has been satisfied. *See id.* § 5.122(a).

We therefore hold that the district court was correct in ruling that the Commission erred by allowing the executive director to issue the order amending Marshall's permit.

## CONCLUSION

We have determined that the district court was correct in determining that Marshall's application for an industrial use required notice and the opportunity for a contested-case hearing under section 11.122(b) of the water code. The district court was also correct in determining that the Commission could not allow the executive director to issue the order amending Marshall's permit. However, because we have determined that section 11.085(v)(4) applies, notice and the opportunity for a hearing do not apply to Marshall's interbasin transfer request. We therefore reverse that portion of the district court's judgment that Marshall's interbasin transfer request required notice and the opportunity for a contested-case hearing and render judgment that, without the necessity for notice and hearing, the executive director was empowered to amend the permit providing for the interbasin transfer. We affirm the district court's judgment in all other respects.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: October 16, 2003

16