# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00690-CV

**Brownsville Irrigation District, Bayview Irrigation District,
Cameron County Irrigation District No. 6, Hidalgo and Cameron Counties Irrigation
District No. 9, and Valley Acres Irrigation District, Appellants**

**v.**

**Texas Commission on Environmental Quality; Presidio Valley Farms, Inc.;
Maverick County; City of Laredo; and City of Eagle Pass Water Works System, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GN-06-000840, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

This case concerns whether the Texas Commission on Environmental Quality properly allowed a party authorized to divert water from the Rio Grande to change the location of and the purpose for that diversion of water. Appellee Presidio Valley Farms, Inc. has a certificate of adjudication[1] authorizing it to divert a certain amount of water each year from the Rio Grande at several locations in Presidio County and to use the water for irrigation purposes. In 2003, in conjunction with Maverick County, the City of Laredo, and the City of Eagle Pass Water Works System, Presidio Valley Farms filed applications with the Commission to amend its certificate of

---

[1] A certificate of adjudication is essentially a water rights permit that has been subjected to a water rights adjudication proceeding. *City of Marshall v. City of Uncertain*, 124 S.W.3d 690, 692 n.1 (Tex. App.—Austin 2003), *aff'd in part and remanded*, 206 S.W.3d 97 (Tex. 2006); *see* Water Rights Adjudication Act, Tex. Water Code Ann. §§ 11.301-.341 (West 2008).

adjudication to relocate the authorized points of diversion in Presidio County to points of diversion downstream in Maverick County, Laredo, and Eagle Pass and to change the purpose of use of the water from irrigation to municipal. Appellants Brownsville Irrigation District, Bayview Irrigation District, Cameron County Irrigation District No. 6, Hidalgo and Cameron Counties Irrigation District No. 9, and Valley Acres Irrigation District (collectively, "the Water Districts") intervened to protest the applications. After a contested case hearing, an administrative law judge issued a proposal for decision recommending that the applications be denied. The Texas Commission on Environmental Quality declined to follow the ALJ's recommendation and instead, entered an order approving the applications. The Water Districts sought judicial review of the Commission's order, and the district court affirmed the order.

The sole issue presented on appeal is whether the Commission complied with its administrative rule governing amendments to water rights in approving the applications of Presidio Valley Farms, Maverick County, the City of Laredo, and the City of Eagle Pass Water Works System to amend the certificate of adjudication. Specifically, we are asked to decide whether the Commission approved "an applicable conversion factor" for the transfer of the points of diversion and place of use from Presidio County to Maverick County, Laredo, and Eagle Pass as required by section 303.42(4) of the administrative code. *See* 30 Tex. Admin. Code § 303.42(4) (2005). We conclude that the Commission complied with section 303.42(4) of the administrative code in approving the applications and, therefore, affirm the judgment of the district court.

2

**Background**

Presidio Valley Farms is located in Presidio County, Texas, which is bordered by a portion of the Rio Grande known as the Upper Rio Grande.[2] Presidio Valley Farms owns surface water rights pursuant to Certificate of Adjudication No. 23-952 authorizing the diversion of 8,059 acre-feet of water per year from the river at ten locations, or points of diversion, in Presidio County. Under this certificate of adjudication, the water diverted by Presidio Valley Farms is to be used for irrigation purposes. In 2003, after filing for bankruptcy protection, Presidio Valley Farms entered into sales agreements to sell its water rights under the certificate of adjudication to Maverick County, Eagle Pass, and Laredo, which are located downstream from Presidio County in the Middle Rio Grande region.

After the sales agreements were approved by the bankruptcy court, Presidio Valley Farms, in connection with Maverick County, Eagle Pass, and Laredo, filed three applications with the Commission to amend its certificate of adjudication. The applications sought to transfer the points of diversion in Presidio County to points of diversion downstream in Maverick County, Eagle Pass, and Laredo, change the purpose of use of the water from irrigation to municipal, change the place of use from Presidio County to the service areas of Maverick County, Eagle Pass, and Laredo, and reduce the combined diversion rates from 173.8 cubic feet per second to 75 cubic feet

---

[2] The Texas Commission on Environmental Quality's administrative rules governing the operation of the Rio Grande apply to three portions of the river—the Upper Rio Grande, the Middle Rio Grande, and the Lower Rio Grande. *See* 30 Tex. Admin. Code § 303.1 (2005). The Upper Rio Grande is the segment of the river between Fort Quitman, Texas, and the Amistad Reservoir dam, the Middle Rio Grande is the segment of the river between the Amistad Reservoir dam and the Falcon Reservoir dam, and the Lower Rio Grande is the segment of the river between the Falcon Reservoir dam and the Gulf of Mexico. *See id.* § 303.2 (2005).

per second. Under the proposed amendments, the amount of water available at the points of diversion in Maverick County, Eagle Pass, and Laredo would vary depending on the amount of water that could have been diverted approximately one week earlier at the points of diversion in Presidio County.[3] Additionally, the proposed amendments required the Rio Grande watermaster[4] to follow a twelve-step accounting procedure to reduce the amount of water available at the new points of diversion to account for natural channel and transportation losses that occur as water flows down the river. Lastly, the proposed amendments contained several "special conditions" to give the watermaster flexibility to take necessary actions to protect downstream water rights in the Middle and Lower Rio Grande.

The Water Districts intervened, arguing that the applications to amend Certificate of Adjudication No. 23-952 should be denied because the Commission did not approve an "applicable conversion factor" as required by section 303.42(4) of the administrative code, which governs the transfer of points of diversion or place of use of water rights from the Upper Rio Grande to the Middle and Lower Rio Grande. *See id.* After a contested case hearing, an administrative law judge with the State Office of Administrative Hearings issued a proposal for decision recommending that the Commission deny the applications. The proposal for decision stated:

---

[3] The one-week lag time is used to account for the time it takes the water to flow approximately 450 to 600 river miles downstream from the points of diversion in Presidio County to the proposed points of diversion in Maverick County, Eagle Pass, and Laredo.

[4] The watermaster is the person appointed by the executive director of the Commission pursuant to section 11.326(a) of the Texas Water Code to administer water rights in a given water division or group of water divisions. 30 Tex. Admin. Code § 304.3(15) (2005); *see* Tex. Water Code Ann. §§ 11.326 (appointment of watermaster), .327 (duties of watermaster) (West 2008).

4

the Commission's rules at 30 Tex. Admin. Code (TAC) § 303.42(4)(A) require the application of a conversion factor when diversion points are transferred from the Upper Rio Grande to the Middle Rio Grande and the use of the water is converted from irrigation to municipal. Because Applicants have failed to include an applicable conversion factor in their proposed amended COAs, the ALJ recommends that the Commission deny the applications.

The Commission disagreed with the ALJ's recommendation and entered an order approving the applications, finding that "the channel and transportation losses and Special Conditions contained in the Draft Amendments constitute an applicable conversion factor referred to in 30 TAC § 303.42(4)(A)." The Water Districts sought judicial review of the Commission's order, and the district court affirmed the order.

**Discussion**

The sole issue on appeal concerns whether the Commission approved an "applicable conversion factor" as required by section 303.42(4) of the administrative code in approving the applications of Presidio Valley Farms, Maverick County, Eagle Pass, and Laredo to amend Certificate of Adjudication No. 23-952. To place the parties' arguments on this issue in context, we briefly summarize the administration of water rights and distribution of water to water rights holders in different areas along the Rio Grande.

Presidio Valley Farms' water rights under Certificate of Adjudication No. 23-952 are governed by the appropriation system applicable to water from the Upper Rio Grande.[5] Under this system, which applies to all water rights in the Upper Rio Grande, the available water flowing in the

---

[5] This appropriation system was previously applicable to the entire Rio Grande, but is not currently applicable to the Middle and Lower Rio Grande.

5

river is allocated based on the date order in which the water rights were acquired or originally granted by the State of Texas, with the oldest water right being allocated its authorized share of water first, followed by the second oldest water right, and so forth. Additionally, the type of use authorized by the water right—domestic, municipal, irrigation, etc.—has no bearing on water allocations among holders of water rights. Water rights governed by this appropriation system are often referred to as "run-of-the-river rights" because the water supply for these type of rights is limited to the water flowing in the river that is not subject to use by senior appropriators downstream.

This "run-of-the-river" appropriation system does not apply, however, to water rights in the Middle and Lower Rio Grande that are supplied from the Amistad and Falcon Reservoirs. In these regions, distribution of water to water rights holders is governed by a system that gives priority to certain authorized uses of the water irrespective of the date that the water right was acquired. According to the Commission's rules, the Rio Grande watermaster maintains a 225,000 acre-feet reserve for domestic, municipal, and industrial ("DMI") uses of the water, which is set aside and replenished each month out of the United States' share of water in the Amistad and Falcon Reservoirs. *See* 30 Tex. Admin. Code §§ 303.21, .22 (2005). The watermaster then allocates water from the "usable storage" of the Amistad and Falcon Reservoirs each month to various "accounts" based on the authorized use of the water, giving priority to DMI water rights. *See id.* § 303.22. After water is completely allocated to DMI water rights, any remaining water is allocated to irrigation water rights. *See id.* Irrigation water rights are further divided into two priority classifications—Class A water rights and Class B water rights. *Id.*; *see also* 30 Tex. Admin. Code

6

§ 303.2 (2005). Class A water rights holders receive 1.7 times as much water as Class B water rights holders when water is available for allocation to irrigation use. 30 Tex. Admin. Code § 303.22.

All holders of certificates of adjudication must obtain authority from the Commission to change the place of use, purpose of use, or point of diversion, or otherwise alter a water right. *See* Tex. Water Code Ann. § 11.122(a) (West 2008). Section 11.122 of the water code provides:

> Subject to meeting all other applicable requirements of [chapter 11 of the water code] for the approval of an application, an amendment, except an amendment to a water right that increases the amount of water authorized to be diverted or the authorized rate of diversion, shall be authorized if the requested change will not cause adverse impact on other water right holders or the environment on the stream of greater magnitude than under the circumstances in which the . . . certificate of adjudication that is sought to be amended was fully exercised according to its terms and conditions as they existed before the requested amendment.

*Id.* § 11.122(b). Section 11.122 also provides that the Commission "shall adopt rules to effectuate the provisions of this section." *Id.* § 11.122(c).

The Commission's rule governing amendments to water rights prohibits the transfer of the point of diversion or place of use of water rights from the Lower and Middle Rio Grande to the Upper Rio Grande (a transfer upstream). *See* Tex. Admin. Code § 303.42(3). However, the amendments sought by Presidio Valley Farms, Maverick County, Eagle Pass, and Laredo to Certificate of Adjudication No. 23-952 seek to transfer the points of diversion and places of use from the Upper Rio Grande into the Middle Rio Grande (a transfer downstream). Section 303.42 of the administrative code allows these types of transfers if certain requirements are met. That section provides, in relevant part:

7

(4) Transfers of the point of diversion or place of use of water rights from the Upper Rio Grande into the Middle and Lower Rio Grande below International Amistad Reservoir will be prohibited unless:

(A) an applicable conversion factor has been approved by the commission;

(B) the commission finds that the transfer would not impair other water rights within the Middle and Lower Rio Grande; and

(C) the commission finds that the transfer would not reduce the amount of water available for allocation.

*Id.* § 303.42(4).

In this appeal, the Water Districts argue that the Commission erred by approving the applications to amend Certification of Adjudication No. 23-952 because it did not approve "an applicable conversion factor" as required by section 303.42(4)(A).[6] Although the term "applicable conversion factor" is not defined anywhere in the rules or the water code, the Water Districts argue that section 303.43 of the administrative code, which governs the conversion of Class A and B irrigation water rights to DMI rights within the Middle and Lower Rio Grande, requires the Commission to apply 0.5 as "an applicable conversion factor" to Presidio Valley Farms' water rights in order to approve the requested amendments.

The Commission responds that it approved an applicable conversion factor by reducing the maximum amount of water that Maverick County, Eagle Pass, and Laredo can divert to account for channel and transportation losses and by allowing the watermaster to take actions to

---

[6] The Water Districts do not challenge the Commission's findings pursuant to section 303.42(4)(B) and (C) that the proposed transfer would not impair other water rights within the Middle and Lower Rio Grande or reduce the amount of water available for allocation.

protect downstream water rights in the Middle and Lower Rio Grande when necessary. It argues that "an applicable conversion factor" is an intentionally undefined term and that what constitutes "an applicable conversion factor" changes upon the facts of each proposed transfer of the points of diversion or places of use from the Upper Rio Grande into the Middle or Lower Rio Grande. According to the Commission, as long as it approves certain measures that are designed to protect other water rights and the water available for allocation on a case-by-case basis for each proposed transfer, this satisfies the requirement that the Commission approve "an applicable conversion factor" in section 303.42(4)(A). When, as here, there are aspects of the application of a regulation that are policy determinations, we will defer to the agency's policy determinations as to those aspects of the application of the regulation unless they are plainly erroneous, inconsistent with the language of the rule, inconsistent with statute, or a violation of the constitution. *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575-76 (Tex. App.—Austin 2002, pet. denied); *H.G. Sledge Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d. 597, 604 (Tex. App.—Austin 2000, pet. denied).

We conclude that the Commission's interpretation of section 303.42(4)(A) is not erroneous or inconsistent with the language of the rule or a statute. The fact that neither the water code nor the rule defines what constitutes "an applicable conversion factor" indicates that the Commission may, by design, exercise discretion in deciding what kind of conversion factor to apply in each case. Additionally, the following comment to subsection (4) of section 303.42 when it was adopted in 2001 suggests that the Commission is only required to approve certain measures designed

9

to protect the other water rights and the water available for allocation in approving an applicable conversion factor for each proposed transfer:

> New language is proposed in § 303.42(4) to define the conditions for an inverse sale (from above International Amistad Reservoir to the Lower and Middle Rio Grande Basins). These transfers would be prohibited unless the transfer request uses a conversion factor approved by the commission which would not impair other water rights or water available for allocation. This change is necessary to clarify that such a transfer is not allowed without an approved conversion factor and a showing of no impairment of other water rights because water rights in the Lower and Middle Rio Grande Basins are administered under a totally different system than exists above International Amistad Reservoir. These rights can only be transferred in a manner that ensures protection of other water rights.

26 Tex. Reg. 3013 (2001).

In addition, the provisions of section 303.43 of the administrative code, which govern the conversion of Class A and B irrigation water rights to DMI rights within the Middle and Lower Rio Grande, do not supply the applicable conversion factor required by section 303.42(4)(A). Section 303.43 provides that "[a]ll Class A and B priority rights in the Lower and Middle Rio Grande which have been or will be acquired for domestic, municipal, or industrial use shall be amended to authorize the change in purpose of use and converted to receive a definite quantity of water in acre-feet per annum." 30 Tex. Admin. Code 303.43. The rule then states how to convert these priority rights to reflect a change in purpose of use, providing that "[o]ne acre-foot of Class A irrigation water right shall be converted to 0.5 acre-feet of water per annum for either domestic, municipal, or industrial purposes." *Id.* Section 303.43 does not control this case, however, because Presidio Valley Farms' water rights under Certificate of Adjudication No. 23-952 are not Class A irrigation water rights in the Middle or Lower Rio Grande. Instead, as discussed

above, Presidio Valley Farms' water rights are located in the Upper Rio Grande and are governed by a different appropriation system. Presidio Valley Farms' water rights are run-of-the-river rights. Although the proposed amendments to Certificate of Adjudication No. 23-952 relocate the points of diversion to the Middle Rio Grande and change the use of the water from irrigation to municipal, the water right itself remains a run-of-the-river right. In other words, the proposed amendments do not convert the water right from an Upper Rio Grande run-of-the-river water right to a Middle Rio Grande priority-based, Class A irrigation water right simply because the water is diverted at a different location and used for a different purpose. Because section 303.43 only governs the conversion of Class A and B irrigation water rights to DMI water rights, it has no bearing on whether the Commission approved an applicable conversion factor in approving the requested amendments to the run-of-the-river rights at issue in this case.

We hold that the Commission approved an applicable conversion factor in approving the requested amendments to Certificate of Adjudication No. 23-952 in accordance with its rules. Consequently, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   August 28, 2008

11